White, J.
The parties to this action are lawyers, and the plaintiff is admitted to practice his profession in the state of Michigan. They became partners on May 1, 1887, with offices in this city. The copartnership was to continue from year to year, subject to termination on April 30th in any year, on one month’s notice. The firm was dissolved May 1, Í890. In June, 1887, the defendant qualified as executor of the last will and testament of Adeline C. Hotchkiss, deceased, in the state of Michigan. The estate of Mrs. Hotchkiss was worth, perhaps, $60,000. Claims to a large amount were made against the estate, and, in defending against them, the plaintiff, and the defendant too, performed legal services of considerable value. The plaintiff was requested by the defendant to perform or join him in the performance of those *379 services, and the most important question about which the parties disagree is whether the plaintiff acted as an attorney and counselor at law in this state and in Michigan upon the retainer and implied promise of the defendant to personally pay him what such services would be worth, or whether the plaintiff performed the services as a copartner with the defendant, with the understanding that his compensation was to come from the estate of Mrs. Hotchkiss. To my mind there is a great preponderance of evidence in favor of the defendant upon this question. It appears without dispute that the books of account and office registers of the firm were kept, from the begin'ning to the end, almost exclusively by the plaintiff, and the correspondence of the firm was largely conducted by him. These records and this_correspondence covered the Hotchkiss estate business,, and clearly indicate that it was treated by the plaintiff as firm business ; at any rate, until about the time of the dissolution. Moneys in considerable amounts, from time to time received by each of the parties from the Hotchkiss estate, and on account of the services rendered by the plaintiff, were entered upon the firm books, and divided between the plaintiff and defendant in the proportions provided for in their articles of copartnership. A statement of the firm’s assets made up by the plaintiff at the time of the dissolution contains an item of $6,000, which the plaintiff even now testifies represented what he thought at the time should be paid by the estate to the firm or to him and the executor together. Ho claim of the character now sought to be enforced by the plaintiff was ever made until about the time of the dissolution, and up to that time his every act indicated that he expected his compensation with that of his partner to come from the estate. The rule of law that the defendant is not permitted, either in this state or in Michigan, to enforce any claim for legal services rendered by him or by the firm of Day & Parker as attorneys for the Hotchkiss estate is invoked as a reason why the plaintiff here should be allowed to recover. The rule is a salutary one, and might be applied with profit if either Day or Day & Parker were seeking to enforce such a claim against the estate. The reason is without force in this controversy, in my opinion.
If the question of fact whether the parties understood that the defendant, as an individual, was to compensate the plaintiff for his services, or that such compensation should be derived from the estate for the benefit of their copartnership business, were a close one, a desire to square the conduct of the partners with the strict rules of law would naturally lead to the conclusion that the arrangement under which the services were rendered by the plaintiff was as he contends. But from my point of view the question is not a close one at all. To my mind it is clear that the business was considered that of the partnership, and that to hold the contrary is to permit the parties to stultify themselves. Their every word and act to the time of the dissolution establishes the correctness of this position. The circumstance that in some instances the parties, in receiving moneys, went through a form which on its face might indicate that they were dealing with each *380 other as individuals, and not as copartners, but strengthens my belief that those forms were used merely as forms, and in no-sense to represent the truth of the transaction. In each instasce the use of those forms was immediately followed by an actual division of the moneys between themselves in the proportion and in accordance with their partnership articles.
If the evidence of the plaintiff in this case were positive and direct to the point (which* as I read it, it is not) that he understood at all times down to the dissolution of the firm that his services were performed for the defendant as an individual, and not for the benefit of the firm, then, clearly, such testimony, being flatly contradicted by his acts while the partnership existed, would be entitled to but little weight. Lynch v. Pyne, 42 N. Y. Supr. Ct. 11 ; Keller v. Manufacturiny Co., 39 Hun, 348; Molloy v. Railroad Co., 10 Daly, 453; O'Brien v. McManus, 13 id. 37. But it is unnecessary to invoke the rule expounded in those cases, because the plaintiff does not testify to a single fact which is inconsistent with the view here taken. "I do not think that the plaintiff’s evidence that defendant requested him to perform these services conflicts with this view of the matter. Such a request is not at all inconsistent with the idea that they were in truth and in fact to be rendered for the benefit of the firm, in precisely the manner and to the extent that they were so considered and treated by both parties afterwards. Hor are we interested at, this time in the fact that the defendant, in rendering his account as executor to the court in Michigan, claimed under oath to have paid to the plaintiff all of the moneys theretofore received by both of them, except so far as that fact may help us to come to a correct decision of the vital question here. In the absence of such conduct on the part of the plaintiff as would tend to clearly establish the contrary to be the truth of the matter, it may well be that the forms adopted by the defendant in handling the moneys received from the Hotchkiss estate, and his claim of having paid all of those moneys to the plaintiff, as contained in his account rendered to the Michigan court, would be conclusive upon him upon that subject. Ho such conclusion, but the contrary, is inevitable, in the light of what the plaintiff himself did. The act of including those moneys in his account by the defendant, it. is true, was and is, so far as this record discloses, inconsistent with the idea that they had already been appropriated by him and the plaintiff as copartners. This is a collateral matter, however. It is not an issue between these parties. It may be open to explanation; and as for myself, under the circumstances, I am going to assume that it will be satisfactorily explained if any explanation shall be deemed necessary hereafter.
Upon the argument, of this appeal, it was contended by the plaintiff that it is proper, where one member of a firm of lawyers is an executor, for him to retain his partner as his attorney in matters relating to the trust, without any agreement or understanding between them in advance as to a division of the compensation thus earned by the attorney of record, and, after the business .is completed, for the attorney of record to divide his costs, or give to *381 his partner who had thus employed him, a portion of the compensation which he had earned. Assuming, for the sake of the argument, the soundness of this lego-ethical proposition, it is quite possible that in this case the parties were attempting to put it into practice, but from necessity, or in their anxiety to realize before the business was completed, they violated one of the presumably essential conditions upon which the proposition is supposed to rest; that is, they began to divide from the beginning, instead of waiting until the business was finished.
I am not willing to permit a recovery by the plaintiff upon the undisputed facts of the case, and therefore the judgment appealed from should be reversed, and ,a new trial ordered, with costs to abide the event.